NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : |
| | : Crim. No. 09-00020 (RBK) |
| v. | : |
| | : **OPINION** |
| JAVON GORDON, | : |
| Defendant. | : |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Defendant's Motion for Compassionate Release under the First Step Act (ECF No. 69) and Motion to Compel Response and/or Ruling (ECF No. 80). For the reasons set forth below, Defendant's Motions are **DENIED**.

**I.   BACKGROUND**

**A.   Factual Background**

Defendant Javon Gordon is an inmate in federal custody at Federal Correction Center Jesup. (ECF No. 72, "Govt. Opp'n" at 1). In August 2010, Gordon pleaded guilty to two counts of a superseding Indictment charging him with transporting minors in interstate commerce for the purpose of prostitution. (ECF No. 50). In September 2011, Defendant was sentenced to a total of 188 months in prison, followed by a life term of supervised release. (ECF No. 59).

On August 5, 2020, Defendant submitted a formal request for compassionate release to the Bureau of Prisons. (Govt. Opp'n at 4–5). This request was denied on October 6, 2020. (*Id.*) On February 11, 2021, Defendant filed the current motion with the Court seeking a sentence

reduction under 18 U.S.C. § 3582(c)(1)(A) based on his post-traumatic seizures and hypertension. *See* (ECF No. 69, "Def. Mot."); (Govt. Opp'n at 5). The United States opposes Defendant's request. (Govt. Opp'n).

## II. LEGAL STANDARD

### A. Motion for Reduction of Sentence Under the First Step Act

Section 3582(c)(1)(A), as amended by Section 603(b) of the First Step Act, provides:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A). The changes implemented by the First Step Act's amendment allow prisoners to directly petition the court, as opposed to the Bureau of Prisons, for a reduction in sentence under 18 U.S.C. § 3852(c)(1)(A)(i) provided, however, they satisfy the exhaustion requirements first. *United States v. Rodriguez*, 451 F. Supp. 3d 392, 396 (E.D. Pa. 2020).

As such, the first step for a defendant in a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) is to exhaust any available administrative remedies. *United States v. Babbitt*, 496 F. Supp. 3d 903, 907 (E.D. Pa. 2020). To exhaust administrative remedies, a defendant must first present his request for compassionate release to the warden. *United States v. Raia*, 954 F.3d 594, 595–96 (3d Cir. 2020). Thirty days after submitting the request or after receipt of an adverse decision, whichever is earlier, the defendant may move for compassionate release in the district court. *Id.*; *Babbitt*, 496 F. Supp. 3d at 907. At the second step, a defendant

must show that "(1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission, and (3) the applicable sentencing factors under § 3553(a) warrant a reduction." *United States v. Rivera*, No. CR 06-849 (NLH), 2022 WL 1284717, at *1 (D.N.J. Apr. 29, 2022) (*quoting United States v. Pabon*, Crim. No. 17-165-1, 2020 WL 2112265, at *2 (E.D. Pa. May 4, 2020)).

"Extraordinary and compelling reasons" are not defined by statute. Rather, Congress tasked the United States Sentencing Commission with providing a definition. Congress's only instruction to the Commission was that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). The Commission provided such a definition in U.S.S.G. § 1B1.13 cmt. n.1(A)–(D). There, the Commission explained that extraordinary and compelling reasons exist where there is:

> (A) terminal illness diagnoses or serious medical, physical or mental impairments from which a defendant is unlikely to recover, and which "substantially diminish" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence; or (C) two family related circumstances: (i) death/incapacitation of the only caregiver for the inmate's children or (ii) incapacitation of an inmate's spouse, if the inmate is the spouse's only caregiver.

U.S.S.G. § 1B1.13, cmt. n.1(A)–(C). In subsection (D) of the Application Note to U.S.S.G. § 1B1.13, is a catchall provision that gives the Director of the BOP the authority to determine if "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with" the other three categories. *Id.* cmt. n.1(D). The definition of "extraordinary and compelling reasons" has not been updated since the First Step Act's enactment.

The Third Circuit recently held that courts are not bound by Section 1B1.13's definition of "extraordinary and compelling reasons" when considering prisoner-initiated motions. *United States v. Andrews*, 12 F.4th 255, 259 (3d Cir. 2021), *cert. denied*, 142 S. Ct. 1446 (2022).

Nonetheless, Section 1B1.13 "still sheds light on the meaning of extraordinary and compelling reasons" and can provide a useful guide for courts considering compassionate release motions. *Id.* at 260 ("[T]he District Court did not err when it consulted the text, dictionary definitions, and the policy statement to form a working definition of 'extraordinary and compelling reasons.'").

## III. DISCUSSION

The United States agrees that the first step, exhaustion of administrative remedies, has been satisfied here. (Govt. Opp'n at 5). Defendant sought compassionate release from the warden of FCI Jesup, which was denied on October 6, 2020. (*Id.*) Therefore, the Court must consider whether Defendant has carried his burden at the second step of the analysis. We find that Gordon has not shown that extraordinary and compelling reasons warrant a reduction in his sentence.[1]

### A. Extraordinary and Compelling Reasons

Gordon asserts that the COVID-19 pandemic, in combination with his health conditions of hypertension and seizure disorder, constitute extraordinary and compelling circumstances warranting compassionate release. (Def. Mot. at 2) Gordon contends that there have been "over 300 cases of Covid-19" at FCI Jesup, and that there is a lack of testing for inmates within the facility. (*Id.*) Gordon also states that inmates often do not seek medical care because of a lack of trust in FCI Jesup's medical services. (*Id.*)

The mere "existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner[.]" *United States v. Roeder*, 807 Fed. App'x 157, 161 n.16 (3d Cir. 2020). Most

---

[1] Defendant spends part of his motion attacking the validity of his plea agreement and arguing that his counsel was ineffective. (Def. Mot. at 2). The Court declines to consider those arguments as "[Section] 3582(c)(1)(A) provides a mechanism to seek a reduction in the term of a sentence, not to challenge its validity." *United States v. Handerhan*, 789 F. App'x 924, 926 (3rd Cir. 2019); *United States v. McLean*, No. 21-2301, 2021 WL 5896527, at *2 (3d Cir. Dec. 14, 2021).

defendants who successfully move for compassionate release related to COVID-19 through Section 3582(c)(1)(A) demonstrate that: (1) they are particularly vulnerable to developing severe illness from COVID-19 due to age or a medical condition(s); and (2) there is "an actual, non-speculative risk of exposure to COVID-19 in the facility where [they are] held." *United States v. Somerville*, 463 F. Supp. 3d 585, 597–98 (W.D. Pa. 2020).

Defendant has not demonstrated that he faces an actual, non-speculative risk of exposure to COVID-19 at FCI Jesup. There are only three active cases of COVID-19 at FCI Jesup among inmates and no active cases among staff currently. *Coronavirus*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus (last visited May 6, 2022). Moreover, 159 staff members and 1,201 inmates at FCI Jesup have been fully vaccinated against COVID-19 to date, and inmates have been offered booster shots. *Id.* Gordon himself is fully vaccinated against COVID-19, having received the Janssen (Johnson & Johnson) vaccine on June 4, 2021. (ECF No. 79, Ex. A). The vaccination of inmates and staff greatly reduces the risk of COVID-19 exposure and infection within the facility. *See United States of America v. Martinez*, No. CR 16-503 (KM), 2022 WL 1320618, at *4 (D.N.J. May 2, 2022) ("The likelihood of a COVID-19 infection has also been greatly reduced by vaccination of [the defendant] and others at the prison.").

Nor does Gordon establish that the risks he faces from COVID-19, in light of his individual medical conditions and circumstances, are so extraordinary and compelling as to justify compassionate release. Gordon asserts that his hypertension and post-traumatic seizures place him at a uniquely high risk of suffering grave illness if he contracts COVID-19. (Def. Mot. at 2). While hypertension may raise the risk of severe illness due to COVID-19, *People with Certain Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-

conditions.html (last visited May 6, 2022), courts have consistently found that the fact that an inmate has hypertension is insufficient, without more, to constitute an "extraordinary and compelling" reason warranting compassionate release,[2] *see United States v. Johnson*, No. CR 18-578-01 (KM), 2022 WL 901468, at *4 (D.N.J. Mar. 28, 2022) ("Even in the pre-vaccine era, '[m]ultiple courts in this District have denied compassionate release to inmates suffering from hypertension and obesity because this lower degree of risk does not establish extraordinary and compelling reasons to justify release on its own.'" (quoting *United States v. Manon*, No. CR 16-00460, 2022 WL 408958, at *3 (D.N.J. Feb. 10, 2022))) (collecting cases); *United States v. Ackerman*, No. CR 11-740-KSM-1, 2022 WL 1214172, at *3 (E.D. Pa. Apr. 25, 2022) ("In interpreting [the CDC] guidance, many courts in this Circuit have found that hypertension does not constitute an extraordinary or compelling reason to reduce a defendant's sentence.") (collecting cases). Further, given Gordon is fully vaccinated against COVID-19, (ECF No. 79, Ex. A), he is substantially protected from COVID-19 infection and, in the case of breakthrough illness, from severe symptoms,[3] *see United States v. Williams*, No. CR 11-00421-SDW-1, 2022 WL 950994, at *2 (D.N.J. Mar. 29, 2022) ("If a defendant is vaccinated, many courts have found that there is an insignificant likelihood that the defendant 'will contract COVID-19 and become seriously ill.'") (collecting cases); *Ackerman*, 2022 WL 1214172, at *4 (collecting cases).

---

[2] Defendant fails to identify any evidence that his seizure disorder places him at higher risk of infection and illness from COVID-19. The Court notes that seizure disorder is not classified by the CDC as a risk factor for COVID-19. *See Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited May 6, 2022). Even if Gordon's seizure disorder placed him at higher risk for COVID-19, our analysis would not change substantially given Gordon's vaccination status, the low incidence of COVID-19 in FCI Jesup, and the fact that Gordon has already contracted and recovered from COVID-19.

[3] Gordon also suggests that the fact he had a confirmed case of COVID-19 presents an extraordinary and compelling reason for his release. (Def. Mot. at 2). If anything, this supports a finding that compassionate release is not warranted as it indicates that Gordon is not at a high risk of severe illness from COVID-19. *See United States v. Saadeh*, No. CR 15-618-01 (SDW), 2021 WL 3400837, at *2 (D.N.J. Aug. 4, 2021), *aff'd on other grounds,* No. 21-2641, 2021 WL 5822395 (3d Cir. Dec. 7, 2021) ("Courts in this district have roundly denied compassionate release to inmates who contracted and recovered from COVID-19 without serious illness.") (collecting cases).

The Court does not wish to minimize Gordon's concern for his well-being or seriousness of the COVID-19 pandemic for those in custody. However, Gordon has failed to demonstrate that his circumstances warrant release. He has not shown that he is at a uniquely high risk for severe illness from COVID-19, nor has he proven that there is currently an actual, non-speculative risk of exposure at FCI Jesup given the high vaccination rate and low incidence of COVID-19 in the facility.

In reaching this decision, we considered letters submitted to the Court by Defendant and Defendant's family and friends discussing his character and rehabilitative efforts. *See* (ECF Nos. 70, 73, 74, 75, 76). Though admirable, nothing in these letters demonstrates extraordinary and compelling reasons for release. *Williams*, 2022 WL 950994, at *3 ("[W]hile this court applauds Defendant's efforts to rehabilitate himself during his incarceration by participating in classes and programs, these efforts do not demonstrate 'compelling and extraordinary reasons' that justify early release."). We also considered a letter from Defendant's mother, who asks that Gordon be released so that he may act as her caregiver. (ECF No. 77). While the Court empathizes with Defendant's mother's situation, this is not a family circumstance that justifies early release.

**B. Section 3553(a) Factors**

An analysis of the Section 3553(a) factors further supports the denial of Defendant's request for release. In considering whether to reduce a defendant's sentence, a court must look to the factors contained in 18 U.S.C. § 3553(a). These factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > (B) to afford adequate deterrence to criminal conduct;
> > (C) to protect the public from further crimes of the defendant; and

> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a).

Defendant offers no argument as to how the factors weigh in his favor. By contrast, the Government argues that the factors weigh against release because Defendant has a lengthy criminal history, which includes running a sophisticated criminal enterprise trafficking women and young girls. (Govt. Opp'n at 17–18).

Though the Court commends Gordon for the positive steps that he has taken during his incarceration, *see* (ECF Nos. 70, 73, 74, 75, 76), the Court agrees with the United States that the Section 3553 factors counsel against release. The nature and circumstances of Defendant's criminal history, which includes trafficking minors for prostitution, weigh against early release. And given the heinous nature of the crimes for which Defendant is currently incarcerated—detailed at length in the United States' opposition motion, (Govt. Opp'n at 1–4)—the Court is mindful of the need for the sentence imposed to protect the public from future violence and afford adequate deterrence. Moreover, the Court believes that the present sentence is needed to provide just punishment and specific deterrence for Defendant. Accordingly, the Court finds that the Section 3553(a) factors weigh against release.

### IV.   CONCLUSION

For the reasons expressed above, Defendant's Motion for Compassionate Release under the First Step Act (ECF No. 69) is **DENIED**. Defendant's Motion to Compel Response and/or Ruling (ECF No. 80) is **DENIED as moot**. An order follows.

Dated: 05/06/2022                                             /s/Robert B. Kugler
                                                              ROBERT B. KUGLER
                                                              United States District Judge